UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Petitioner,<br><br>v.<br><br>ASG SOLUTIONS CORP.,<br><br>                         Respondent. | Case No.: 17CV1224 L (BGS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PETITION TO ENFORCE FALSE CLAIMS ACT CIVIL INVESTIGATIVE DEMAND** |

Presently before the Court is the United States' Petition to Enforce False Claims Act Civil Investigative Demand ("CID") issued to Respondent ASG Solutions Corporation d.b.a. American Systems Group. ("Petition" [ECF 1].) As detailed below, through extensions of time and supplemental productions, the items Petitioner asserts Respondent has not produced has decreased since the initial Petition was filed. However, because the record indicates that Respondent still has not fully complied with the CID, the undersigned recommends the Petition to Enforce be granted.

I. **BACKGROUND**

    A. **CID and Initial Response**

On August 7, 2016, the United States Department of Justice issued the CID pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. (Pet., Ex. 1, Civil Investigative Demand No. 0457-0716-03.) The CID and Petition indicate that the United

1

17CV1224 L (BGS)

States Attorney's Office is conducting a false claims law investigation to determine whether there is or has been a violation of the FCA. (Pet. ¶ 2; CID at 1.) Specifically, the USAO is investigating whether Respondent has submitted false claims to the United States "under contracts intended to benefit historically underutilized business zones, which require contractors to maintain a certain ratio of employees from those economically depressed areas, pursuant to 15 U.S.C. § 657a, *et seq.*" (Pet. ¶ 2; CID at 1.) The CID lists 22 items for production. (CID at 3-6.) Petitioner agreed to a rolling production of materials in response to the CID over the course of a few months, but eventually, Respondent ceased producing documents. (Pet. ¶¶ 6, 8, 12-22.)

### B. Petition to Enforce

The instant Petition to Enforce the CID was filed on June 16, 2017. (Pet.) The Petition requests the Court grant the Petition and order Respondent's compliance with the CID, "including but not limited to production of any and all documents described in items 1 through 5, 9, 10, 13 through 20, and 22." (Pet., Prayer for Relief, at 9.)

### C. Extensions

On July 11, 2017, July 24, 2017, and August 11, 2017, the parties filed joint motions seeking to extend the deadline for Respondent to respond to the Petition. (ECF 4, 6, 8.) Each also indicated that Respondent had agreed to produce and had produced supplemental documents for Petitioner's review. (ECF 4 at 2; ECF 6 at 2; ECF 8 at 2.) The final request indicated that it was sought to allow Respondent "additional time to address Petitioner's remaining concerns with the CID" and indicated Petitioner's concurrence in the request for an extension was "premised on Respondent's representation that this additional extension should be sufficient to complete production." (ECF 8 at 2.) Each was granted. (ECF 5, 7, 9.)

### D. Briefing on the Petition

On September 8, 2017, Respondent filed a Response to the Petition. (ECF 10.) In it, Respondent asserts that since the Petition was filed it had: "(a) produced 15,000 documents responsive to nearly every category of documents listed in [the CID]; (b)

indicated that it does not have documents responsive to certain categories, and (c) requested Petitioner provide more information about what documents it is seeking." (Response at 1.) The Response asserts that Respondent "has now fulfilled its obligations to produce documents responding to Categories 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 18, 19, and 21 of the CID." (Resp. at 2.) Respondent asserted "compliance has been completed, *or at worst, is nearly completed*" and "[a]ny uncertainty that remains concerns the limited Categories 15, 16, and 17 of the CID and the question of whether Respondent has any documents responsive to those categories." (*Id.* (emphasis added).) Respondent criticizes Petitioner for not updating or amending the Petition to apprise the Court of the status of the CID following Respondent's additional productions. (*Id.*) Respondent argues the Petition should be denied or dismissed as moot based on Respondent's compliance or in the alternative stayed for 90 days to allow the parties to continue ongoing discussion of a potential resolution. (*Id.* at 2-5.)

On September 14, 2017, Petitioner filed a Reply. It indicated that the "United States is urgently evaluating the responsiveness of [Respondent's] latest production offered last Wednesday evening, but as of this date it appears that Respondent still has not fully produced documents in response to CID Item 13, Items 14 through 17 for fiscal years 2011 through January 3, 2014; and Item 18 from January 1, 2007 through December 1, 2015." (Reply at 1-2.) Petitioner notes the inconsistency of Respondent acknowledging the production is incomplete, claiming it has complied, and not offering a certificate or declaration of compliance as required by the CID. (*Id.* at 2.) The Reply concludes with a Renewed Prayer for Relief presumably in response to Respondent's demand for an update to the Petition. (*Id.* at 4.) The Renewed Prayer for Relief requests a hearing date or an order on the pleadings ordering Respondent's compliance with the CID within 14 business days, "with regard to all unproduced documents, including but not limited to production of any and all documents described in Item 13; items 14-17 for fiscal years 2011 through January 2, 2014; and item 18 from January 1, 2007 through December 1, 2015." (*Id.*)

On September 25, 2017, the Court ordered counsel to diligently attempt to resolve the remaining issues as to Respondent's compliance with the CID, meet and confer on or before October 23, 2017 regarding any outstanding issues, prepare a list of what had not been produced by Respondent, and set a telephonic status conference for October 30, 2017. (ECF 13.)

On October 25, 2017, the Court vacated the telephonic conference, but ordered the parties to file a Joint Statement listing the outstanding issues and, to the extent the parties disputed whether there was an outstanding issue, the parties were to set forth their respective positions. (ECF 14.) It was due on November 1, 2017. (*Id.*)

Petitioner's portion of the November 1, 2017 Joint Statement indicates that Petitioner provided Respondent with an updated list of outstanding items on October 16, 2017 and a new detailed list of outstanding items (following completion of review of the September 6, 2017 and October 5, 2017 additional productions) on October 20, 2017. (Joint Statement [ECF 15] at 2.[1]) It also indicates that Respondent failed to meet and confer with Petitioner by October 23, 2017 despite repeated attempts to do so and waited until the day before the Joint Statement was due, October 31, 2017, to send Petitioner additional documents. (*Id.* at 3.) Petitioner then details the items that were outstanding as of November 1, 2017, understandably without consideration of the October 31, 2017 production Petitioner would not have been able to review. (*Id.* at 3-4.)

Respondent's portion of the Joint Statement indicates it has now provided documents in response to Item 13. (*Id.* at 5.) As to Item 18, Respondent argues Petitioner is demanding documents from January 1, 2007 to December 1, 2015, but the CID only requested documents in Item 18 from 2011 to August 2016. (*Id.*) Respondent also explains that it has repeatedly explained to Petitioner that it is not able to obtain documents from January 3, 2014 to October 2017 in response to items 14 through 18

---

[1] The Court uses the CM/ECF pagination because the Joint Statement lacks page numbers.

"despite its best and repeated efforts to obtain any such documents from its payroll vendor." (*Id.*) Respondent also takes issue with what it characterizes as additional information demanded by Petitioner. (*Id.* at 6.) Respondent indicates it has provided some additional documentation and cited ranges of documents already produced that are responsive. (*Id.*) Respondent also indicates it has questioned Petitioner's demand for timecards for employees not working on HUBZone contracts when the investigation is focused on the HUBZone program. (*Id.*) Respondent also requests that if Petitioner is seeking documents related to HUBZone contracts, the Court stay proceedings for 60 days to allow the parties to meet and confer on that issue. (*Id.*) Finally, Respondent indicates it "can and will provide a certificate of compliance for the CID." (*Id.*)

On November 30, 2017, Petitioner filed an updated summary of the outstanding items after having evaluated Respondent's October 31, 2017 production. It lists the following:

> (a) As described in Item 14, labor distribution reports for fiscal years 2011 through January 4, 2014, and through the present for omitted employees . . .
> (b) As described in Item 15, indirect labor accounts and audit trail reports for fiscal years 2011 through the present . . .
> (c) As described in Item 16, direct labor accounts and audit trail reports for each project for fiscal years 2011 through the present . . .
> (d) As described in Item 17, check registers, cash receipts journals and cash payments journals (or any recordkeeping equivalents) for labor expenses, including: general ledger accounts for fiscal year 2011 to the present; transaction dates, check recipients and amounts from fiscal year 2011 to January 4, 2014; and all responsive documents for all omitted employees previously noted . . .
> (e) As described in Item 18, original payroll reports, timesheets and all other labor timekeeping records for all employees for fiscal years 2011 through 2013, amended payroll for February 2015, and timesheets through the present for employees who did not charge with regard to one of ASG's DSTAMPS-premised vendor invoice codes or HUBZone contracts . . .

(*Id.* at 2)[2]

It also indicates that in identifying these as the only outstanding items, it is relying on Respondent's "full and truthful production as to all CID items, and a pending sworn certificate of compliance and the non-existence of requested materials." (*Id.* at 3.)

## II. DISCUSSION

### A. Legal Standard

"The FCA . . . is the government's primary litigative tool for combatting fraud against the federal government." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993). "Whenever the Attorney General, or a designee . . . has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation, the Attorney General, or a designee, may, before commencing a civil proceeding . . . issue in writing and cause to be served upon such person, a civil investigative demand requiring such person to . . . produce such documentary material for inspection and copying." 31 U.S.C. § 3733 (a)(1)(A).

"Whenever any person fails to comply with any civil investigative demand issued under subsection (a) . . . the Attorney General may file, in the district court of the United States for any judicial district in which such person resides, is found, or transacts business, and serve upon such person a petition for an order of such court for the enforcement of the civil investigative demand." § 3733(j)(1).

Civil investigative demands are enforced as an administrative subpoena. *See United States v. Markwood*, 48 F.3d 969, 975-76 (6th Cir. 1995) (finding FCA CIDs are administrative subpoenas); *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1087 (D.C. Cir. 1992) (treating FTC CID as administrative subpoena, *cert. denied*, 507 U.S. 910

---

[2] As explained below, the list of outstanding items in the Update, as well as the list in the Joint Statement, includes notes as to Respondent's obligations to have those documents under Federal Acquisition Regulations and Respondent's reference to them in a 2014 pre-award survey.

6

17CV1224 L (BGS)

(1993)); *United States v. Witmer*, 835 F. Supp. 208, 212 (M.D. Pa. 1993) (FCA CID), *aff'd*, 30 F.3d 1489 (3rd Cir. 1994); *FTC v. Church and Dwight Co.*, 665 F.3d 1312, 1315-16 (D.C Cir. 2011) (applying standards for enforcement of administrative subpoena to FTC subpoena and CID).[3]

The scope of judicial review for administrative subpoenas is 'quite narrow.'" *See United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012) (quoting *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), overruled on other grounds as recognized in *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir.1994)). As the Ninth Circuit "ha[s] explained: '[t]he scope of the judicial inquiry in . . . any . . . agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.'" *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (quoting *EEOC v. Karuk Tribe Hous. Auth.,* 260 F.3d 1071, 1076 (9th Cir. 2001)); *see also Children's Hosp.*, 719 F.2d at 1428. "If these factors are shown by the agency, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Children's Hosp.*, 719 F.2d at 1428; *see also Peters v. United States*, 853 F.2d 692, 699 (9th Cir. 1988) (summarizing cases addressing subpoenas found unduly or needlessly broad).

**B.  Analysis**

As set forth in detail above,[4] Respondent raises a number of issues with enforcement of the Petition. Respondent argues that because it has largely complied with the CID in producing 40,000 pages of documents the Petition should be dismissed or stayed.

---

[3] There can be differences between CIDs and administrative subpoenas and even between CIDs authorized under different statutory schemes based on the statutory language. However, the general standard that applies is the same.
[4] *See* Section I

Respondent also asserts it does not have payroll documents in its possession responsive to items 14-18 prior to January 1, 2014 and that it should not be required to produce documents related to employees that are not working on HUBZone contracts. Finally, Respondent argues Petitioner's demand for documents back to 2007 as to Item 18 is beyond the scope of the CID. The Court addresses each of these arguments as they relate to the "quite narrow" review applicable to enforcement of CIDs and then considers the remaining issues Respondent raises. *Fed. Express Corp.*, 558 F.3d 848.

### 1. Authority to Investigate

Respondent does not challenge Petitioner's authority to investigate. Regardless, the Court finds the CID falls within § 3733(a)(1)'s authorization to demand "any documentary material or information relevant to a false claims law investigation . . . before commencing civil proceedings." § 3733(a)(1). The USAO is conducting a FCA investigation into potential procurement fraud. (Pet. ¶ 28.) More specifically, the agency is investigating whether Respondent, "a business providing workforce services to United States government agencies through contracting opportunities obtained pursuant to" the HUBZone program, has submitted false claims "under contracts intended to benefit historically underutilized business zones, which require contactors to maintain a certain ratio of employees from those economically depressed areas." (Pet. ¶¶ 2-3; CID at 1.) This falls within the investigative authority provided by § 3733.

### 2. Procedural Requirements

As to the procedural requirements, the CID and Petition indicate they were followed. The CID stated the conduct under investigation and law that may be violated, as required by § 3733(a)(2)(A). The CID also describes the documentary material to be produced in 22 detailed and specific items. Although Respondent indicated in its Response that it was seeking clarification from Petitioner as to documents sought, there was no indication in the Response or the Joint Statement that the CID failed to comply with the procedural requirement to "describe each class of documentary material to be produced with such definiteness and certainty as to permit such material to be fairly identified."

§ 3733(a)(2)(B)(i). The CID also prescribes a return date and identifies the false claims law investigator. § 3733(a)(2)(B)(ii)-(iii). To the extent Respondent's emphasis on the volume of its production suggests an argument that the 30-day time to respond was not reasonable, the numerous extensions provided before and since the Petition was filed have provided amply time to comply.[5]

Respondent also argues Petitioner is exceeding the scope of the CID. Specifically, Respondent claims Petitioner "is now asking for documents under [Item] 18 from January 1, 2007 through December 1, 2015." (Joint Statement at 5.) This concern is not without reason. Item 18 of the CID only requests "[o]riginal payroll reports, timesheets and all other labor timekeeping records for all employees . . . for *fiscal years 2011* through the present." (CID at 9.) (emphasis added).[6] Petitioner's Reply asserts that Respondent has not "fully produced documents in response to . . . Item 18 from *January 1, 2007* to December 1, 2015." (Reply at 1-2 (emphasis added).) The Renewed Prayer for Relief at the conclusion of the Reply also requests Respondent be ordered to produce "any and all documents described in . . . item 18 from *January 1, 2007* through December 1, 2015." (Reply at 12 (emphasis added).) This would suggest Petitioner is exceeding the scope of the documents requested in Item 18 without explanation or justification. However, both the Joint Statement and Petitioner's most recent Update, filed after the Reply, only seek documents from 2011, not 2007. (Joint Statement at 4; Update at 2.) Because Petitioner is only seeking production of documents from 2011 as to Item 18, consistent with the CID, this does not provide a basis for denying enforcement of the Petition.

---

[5] Section 3733(f)(2) allows the false claims investigator to set a later date for production.
[6] The CID as a whole indicates the "relevant time period for each request in this CID shall be from January 1, 2007 through the present (CID Production Time Period) *unless otherwise noted*." (CID at 1 [ECF 1-2 at 3] (emphasis added).) Item 18 notes 2011.

9

### 3. Relevant and Material to the Investigation

In the Joint Statement, Respondent challenges Petitioner's demand for "information related to employee timecards that are not working on HUBZone contracts and the HUBZone program." (Joint Statement at 6.) Petitioner explains that the "United States is investigating [Respondent's] HUBZone contract eligibility, evidenced in material . . . part by [Respondent's] *ratio* of HUBZone residents to its full roster of employees. The CID requires documentation regarding both employee classifications." (Joint Statement at 4 (emphasis added).) As noted above, the Petition also indicates "the United States is investigating whether Respondent . . . submitted . . . false claims under contracts intended to benefit historically underutilized business zones, which require contractors to maintain certain *ratio* of employees from those economically depressed areas, pursuant to 15 U.S.C. § 657a, *et seq*." (Pet. ¶¶ 2, 28 (emphasis added).)

In this context, "[r]elvancy is determined in terms of the investigation rather than in terms of evidentiary relevance." *Golden Valley*, 689 F.3d at 1113 (quoting *Fed. Express. Corp.*, 558 F.3d at 854). And, "[t]he relevancy requirement is 'not especially constraining.'" *Id.* (quoting *Fed. Express Corp.*, 558 F.3d at 854). Courts "must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *Id*. (quoting *Karuk Tribe*, 260 F.3d at 1076). Documentation regarding Respondent's employees that do not work on HUBZone contracts is relevant and material to Petitioner's investigation because Petitioner is investigating whether Respondent has maintained the required ratio of its employees residing in the HUBZone.

### 4. Overbroad or Unduly Burdensome

Respondent does not argue it should not be required to respond to the CID because it is overbroad or unduly burdensome. Although Respondent emphasizes the volume of its production thus far, it does so in arguing it has largely complied with the CID rather than identifying any particular issue with the demands of the CID.

### 5. Compliance

In addition to the issues raised and discussed above, Respondent argues that the Petition should be denied as moot or stayed because it has largely complied with the CID. The Court addresses each of Respondent's arguments as to compliance.

#### a) General Compliance

Respondent argues generally that it has complied with the CID. However, even Respondent acknowledged that there was uncertainty as to its compliance with items 15, 16, and 17 and it had notified Petitioner of troubles it was having "obtaining documents earlier in time." (Response at 2-3.) Similarly, as discussed above, Respondent indicates in the Joint Statement that it has not produced employee timecards for employees not working on HUBZone contracts. (Joint Statement at 6.) However, Item 18 of the CID demands "timesheets and all other labor timekeeping records for *all* employees." (CID at 5 (emphasis added).) These statements by Respondent indicate it has not fully complied with the CID.[7]

#### b) Items 14-18

More specifically, as to Respondent's lack of compliance for items 14-18, Respondent claims "it is not able to obtain documents earlier than January 1, 2014 . . . despite its best and repeated efforts to obtain any such documents from its payroll vendor." (Joint Statement at 5.) Respondent asserts it "cannot be compelled to produce documents it does not have or that do not exist." (*Id.*) However, as to each item, Petitioner cites the applicable Federal Acquisition Regulations that require federal contractors to retain this

---

[7] To the extent Respondent is arguing its partial compliance with the CID renders the CID or the Petition to Enforce it moot or subject to dismissal, it has provided no authority in support of such a proposition. If this were the case, anytime a respondent produced anything responsive to a CID the Petition would have to be denied as moot or dismissed with leave to amend the petition to reflect further compliance. While the Court agrees the entire matter might be more straightforward if Petitioner amended the Petition, dismissing a petition every time a respondent belated produced a response to a CID being enforced would result in potentially unending amendments.

11

documentation for three years after final payments on contracts. (*Id.* at 3.) Petitioner also indicates Respondent "referenced the required labor accounting information in a DCAA pre-award survey completed in 2014, indicating that this contractor retains the documents." (Joint Statement at 3-4.) This would indicate these documents do exist and Respondent did or should have them. The cases Respondent cites do not compel a different conclusion. In *Alexander v. FBI*, the court denied a motion to compel the Executive Office of the President to produce a list that did not exist when there was no reason to think such a list existed. 194 F.R.D. 305, 310 (D.D.C. 2000). Similarly, as to *Jacobs v. Sullivan*, defendants were not required to produce prison log books the prison no longer had because the retention period ended before the case was filed and other documents when there was no reason to think the defendants had them. 2012 WL 3704743 at *8, 10-28, 34[8] (E.D. Cal. Aug. 27, 2012). Here, the CID demands labor and time-keeping records that Respondent should have. Additionally, as explained below, the certificate of compliance Respondent must provide in response to the CID requires Respondent to certify it has provided all responsive materials "which are in the possession, custody, or control" of Respondent. (CID at 10.) Respondent will have to determine whether the documents it vaguely claims it has unsuccessfully tried to obtain are or are not in its possession, custody, or control in providing its certification. As noted below, Respondent has not provided the required certification.

### c) Certificate of Compliance

Respondent has not provided a certificate of compliance. (Joint Statement at 6 (Respondent . . . *will* provide an updated certificate of compliance for the CID") (emphasis added); Update at 3 ("*pending* sworn certificate of compliance")(emphasis added).) The CID requires a certificate of compliance. (CID at 9 ("The production of documentary

---

[8] Respondent did not cite a page within this case, however, the Court has reviewed the entire decision and addresses the pages that it appears Respondent might have been relying on.

material in response to this CID must be made under a sworn certificate in the form printed in this CID"), 8 ("Failure to complete and execute the Certificate of Compliance shall be deemed willful non-compliance with the CID.").) The Form of Certificate of Compliance included in the CID requires a certification that "all the materials required by the CID which are in the possession, custody, or control of the person to whom the CID is directed have been submitted to a custodian named therein" and that "[i]f any such material has not been produced because of lawful objection, the objection to the document and the reasons for the objection have been stated." (CID at 10.) Section 3733(f) requires the same.[9] Respondent has additionally not complied with the CID because no certificate of compliance has been provided.

The Court finds Respondent has not fully complied with the CID.

## CONCLUSION

The Court submits this Report and Recommendation to United States District Judge M. James Lorenz. For the reasons set forth above, it is **RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, (2) **GRANTING** the Petition to Enforce the USAO's Civil Investigative Demand No. 0457-0716-03, and (3) ordering Respondent, within 30 days of the date an order is issued on this Report and Recommendation, to fully comply with the CID, including, but not limited to production of any and all documents described in items 14-18 and completion of the required certificate of compliance.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties **no later than April 5, 2018.** The document should be captioned "Objections to Report and Recommendation."

---

[9] Section 3733(f) requires any production in response to a CID "be made under a sworn certificate, in the form as the demand designates" and that the certification state that "all documentary material required by the demand and in the possession, custody, or control of the person to whom the demand is directed has been produced and made available to the false claims law investigator identified in the demand."

1 **IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **no later than April 12, 2018.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: March 22, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge